# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| TRUSTEES OF THE ILWU-PMA PENSION PLAN,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PAMELA COATES, et al.<br><br>　　　　　Defendants. | Case No. 11-cv-03998 NC<br><br>**REFERRAL FOR REASSIGNMENT AND RECOMMENDATION TO GRANT DEFAULT JUDGMENT AND PERMANENT INJUNCTION**<br><br>Re: Dkt. No. 37 |

Plaintiffs the Trustees of the ILWU-PMA Pension Plan ("the Trustees") bring this interpleader action to resolve conflicting claims to decedent James A. Taylor's ILWU-PMA Pension Plan Survivor Pension benefits ("the Benefits"). The Trustees submit this application for default judgment against defendants Jennifer M. Taylor, Laversa Pier, Mary Taylor, and Sheryl Ann Jackson Perdue ("defendants-in-default"). The Trustees also request that the Court enjoin these defendants from initiating any further legal action regarding their entitlement to the Benefits.

Because defendants-in-default have not consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), this matter should be reassigned to a District Court Judge. The Court recommends that the District Court GRANT default judgment as to the defendants-in-default and ENJOIN them from pursuing further claims to the Benefits.

//

# I. BACKGROUND

## A. The Parties

The Trustees are the fiduciaries and administrators of the ILWU-PMA Pension Plan ("the Plan"), an Employee Retirement Income Security Act ("ERISA") plan. Compl. ¶¶ 3-4, 13, Dkt. No. 1. Decedent James A. Taylor was a Plan participant who began receiving monthly benefits from the Plan when he retired on November 1, 2003. *Id.* ¶¶ 6, 29.

The Trustees allege, based on information and belief, the following information about the defendants. Defendant Laversa Pier, a resident of San Francisco, California, was married to James Taylor from October 11, 1980 until the dissolution of their marriage on a date before November 12, 1982. *Id.* ¶ 9. Defendant Jennifer Taylor, a resident of Brentwood, California, was married to James Taylor on October 10, 1982. *Id.* ¶ 7. Defendant Mary Taylor was married to James Taylor around January 1984 until the dissolution of their marriage around February 1985. *Id.* ¶ 10. Defendant Sheryl Perdue, a resident of Lithonia, Georgia, was married to James Taylor from November 30, 1985 until the dissolution of their marriage on October 31, 1989. *Id.* ¶ 11. Defendant Pamela Coates, a resident of San Francisco, California, married James Taylor on August 6, 1999. *Id.* ¶ 8.

## B. Alleged Facts and Procedural History

The Plan provides that upon the death of a plan participant, the "surviving spouse [as defined by the Plan] will receive a monthly Survivor Pension benefit for the remainder of the surviving spouse's life." *Id.* ¶ 37. Plan participant James Taylor died on November 15, 2009. *Id.* ¶ 31. In January 2010, Pamela Coates and Jennifer Taylor each submitted "an 'Application for Survivor Pension' on account of her marriage to [James Taylor]." *Id.* ¶¶ 32-33. They each also separately submitted copies of their marriage certificates and letters from various California Superior Courts, for the Counties of Alameda, San Francisco, and Contra Costa, stating that no record of the dissolution of either of their marriages exists. *Id.* ¶¶ 32-33, 35-36.

In an effort to resolve these conflicting claims to the Benefits, the Trustees filed this interpleader action under Federal Rule of Civil Procedure 22 naming James Taylor's alleged spouses and former spouses as defendants. *Id.* at 2. Pamela Coates was served on September 6, 2011. *See* Dkt. No. 9. Pamela Coates filed a timely answer to the complaint on September 30, 2011. *See* Dkt. No. 10.

Jennifer Taylor was served on August 29, 2011. *See* Dkt. No. 11. The Trustees allege that a person representing herself as Jennifer Taylor had a telephone conversation with plaintiffs' counsel on September 2, 2011 to inquire about the summons and complaint she received. Nicholas Decl. ¶ 6, Dkt. No. 39. After Jennifer Taylor failed to answer or otherwise appear in this action, the Trustees moved for entry of default against Jennifer Taylor, which the Clerk entered on November 17, 2011. *See* Dkt. No. 19.

Laversa Pier was served on September 19, 2011. *See* Dkt. No. 12. The Trustees allege that Laversa Pier contacted plaintiffs' counsel on September 20, 2011 to indicate that she had no interest in claiming the Benefits on account of her marriage to James Taylor. Nicholas Decl. ¶ 11. After Laversa Pier failed to file a response to the complaint or otherwise appear in the action, the Trustees moved for entry of default against Laversa Pier, which the Clerk entered on November 17, 2011. *See* Dkt. No. 19.

After unsuccessfully attempting to locate Mary Taylor and Sheryl Perdue, the Trustees moved for permission to serve Mary Taylor and Sheryl Perdue by publication. *See* Dkt. No. 23.[1] After the Court granted the motion, the Trustees published summons for Mary Taylor in the San Francisco-based publications *The Recorder* and the *San Francisco Chronicle*. *See* Dkt. Nos. 26, 29. The Trustees published summons for Sheryl Perdue in the *The Recorder*, the *San Francisco Chronicle*, and the Atlanta-based publication the *Daily Report*. *See* Dkt. Nos. 25, 27-28. After Mary Taylor and Sheryl

---

[1] Federal Rule of Civil Procedure 4(e) provides: "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ." California law allows for service by publication if "party to be served cannot with reasonable diligence be served in another manner." Cal. Code Civ. Pro. § 415.50.

Perdue failed to file a timely answer or otherwise appear, the Clerk entered default against Mary Taylor on June 22, 2012 and against Sheryl Perdue on July 2, 2012. *See* Dkt. Nos. 46, 49.

The Trustees now submit this application for default judgment against all four defendants-in-default on the grounds that none of the defendants-in-default have appeared in this action to date and that the remaining defendant, Pamela Coates, would be prejudiced by further delay of this action. *See* Mot. Default J. at 3-4. The Trustees also request that the Court enjoin the defendants-in-default from pursuing any future proceeding in court for the Benefits on the account of James Taylor. *See id.* at 4.

## II. STANDARD OF REVIEW

A default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. FED. R. CIV. P. 55(a). After entry of default, a court has discretion to grant default judgment on the merits of the case. FED. R. CIV. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980).

At the default judgment stage, the factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Facts not contained in the pleadings and claims which are legally insufficient, however, are not established by default. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). In deciding whether to grant default judgment, the Court may then consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

//

## III. DISCUSSION

### A. Subject Matter and Personal Jurisdiction

In considering whether to enter a default judgment, a district court first must determine whether it has jurisdiction over the parties and the subject matter. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### 1. Subject Matter Jurisdiction

The Court has subject matter jurisdiction in this ERISA case under 29 U.S.C. § 1132(e)(1). ERISA permits fiduciaries to "obtain . . . equitable relief . . . to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). The Ninth Circuit has held that such "equitable relief" includes interpleader actions that seek to determine the rightful beneficiaries to a stake in the face of multiple conflicting claimants. *Trs. of ILWU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1132 (N.D. Cal. 2009) (citing *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000)).

#### 2. Personal Jurisdiction over Defendants-in-Default

To enter default judgment, the Court must also have a basis for the exercise of personal jurisdiction over the defendants-in-default. *Tuli*, 172 F.3d at 712; *see also King v. Russell*, 963 F.2d 1301, 1306 (9th Cir. 1992). Under ERISA, fiduciaries may bring an enforcement action in any federal district court "where the plan is administered." 29 U.S.C. § 1132(e)(2). ERISA also provides that "process may be served in any other district where a defendant resides or may be found." *Id.* Under this nationwide service of process provision, a court may exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the state in which the court sits. *Vivien v. Worldcom, Inc.*, No. 02-cv-01329 WHA, 2002 WL 31640557, at *2 (N.D. Cal. July 26, 2002); *see also Denny's, Inc. v. Cake*, 364 F.3d 521, 524 (4th Cir. 2004) (ruling that a federal district court in South Carolina could exercise personal jurisdiction over the California Labor Commissioner because the ERISA plan was administered in South Carolina, the Commissioner had been served in California, and the action was a proper ERISA enforcement action).

Here, the Trustees have brought an ERISA action under 29 U.S.C. § 1132(a)(3) in an effort to "enforce any provisions of . . . the terms of the plan" — that is, to pay out the Benefits to James Taylor's surviving spouse. Mot. Default J. ¶ 1. Defendants Pamela Coates, Jennifer Taylor, and Laversa Pier are residents of California, and defendant Sheryl Perdue is a resident of the State of Georgia. Compl. ¶¶ 7-9, 11. Under ERISA's nationwide service of process provision, this Court may exercise personal jurisdiction over these defendants even if they do not reside in this District. *See Vivien*, 2002 WL 31640557 at *2. Though the complaint does not allege Mary Taylor's state of residence, the Trustees properly served Mary Taylor by publication via San Francisco-based publications. *See* Dkt. Nos. 26, 29.[2] Thus, the Court has a basis for the exercise of personal jurisdiction over all the defendants-in-default to grant default judgment against them. *See Tuli*, 172 F.3d at 712.

**B.     Default Judgment**

    **1.     Default Judgment Against Jennifer Taylor**

The *Eitel* factors weigh in favor of granting default judgment against Jennifer Taylor. *See Eitel*, 782 F.2d at 1471-72. First, the Trustees would suffer prejudice if the court does not enter default judgment against Jennifer Taylor because they would be denied the finality of a judgment sought through this interpleader action. *See Peters*, 660 F. Supp. 2d at 1144; *see also W. Reserve Life Assurance Co. of Ohio v. Canul*, No. 11-cv-01751 AWI, 2012 WL 844589, at *2 (E.D. Cal Mar. 12, 2012), report and recommendation adopted, No. 11-cv-01751 AWI, 2012 WL 1074952 (E.D. Cal. Mar. 29, 2012) (finding that the plaintiff "would be prejudiced if a default judgment is not granted" because plaintiff "has no other alternative by which to evaluate [d]efendant's claim to the life insurance policy." (citation omitted)); *see also W. Conference of*

---

[2] Mary Taylor presumably falls within the nationwide service of process as long as she is a resident of the United States. *See Combs v. Doe*, No. 10-cv-01120 HRL, 2011 WL 738052, at *2 (N.D. Cal. Feb. 23, 2011) (recommending that default judgment be entered against a defendant whose identity and location are unknown).

*Teamsters Pension Plan v. Jennings*, No. 10-cv-03629, 2011 WL 2609858, at *3 (N.D. Cal. June, 5, 2011) ("Plaintiff and [answering defendant] would suffer prejudice if the Court does not enter default judgment. The dispute concerns [d]efendants' competing claims to interpleaded funds. Without entry of default judgment, the competing stakeholders' claims cannot be resolved.").

The second and third factors — the merits of the plaintiff's substantive claim and the sufficiency of the complaint—also weigh in favor of granting default judgment against Jennifer Taylor. The Ninth Circuit has suggested that these two factors together require "plaintiffs' allegations [to] state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, No. 94-cv-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)) (internal quotation marks omitted); *see also Canul*, 2012 WL 844589 at *2 (finding that the plaintiff in a life insurance interpleader action "properly stated a claim for interpleader, and the actions of Plaintiff protect the claims of the remaining defendants").

Here, accepting the Trustee's allegations in the complaint as true, the Court finds that the Trustees have stated a claim upon which they may recover as resolution of defendants' rights to the Benefits will protect the Trustees from multiple liability. *See Canul*, 2012 WL 844589 at *2. Therefore, the second and third *Eitel* factors weigh in favor of granting default judgment against Jennifer Taylor.

The fourth factor — the sum of money at stake — does not weigh for or against default judgment against Jennifer Taylor. In interpleader actions, the sum of money at stake, however significant, is not dispositive as the plaintiffs are not asserting an interest in the interpleaded funds nor are they seeking damages. *Transamerica Life Ins. Co. v. Estate of Ward*, No. 11-cv-0433 JAM, 2011 WL 5241257, at *4 (E.D. Cal. Oct. 31, 2011); *see also Jennings*, 2011 WL 2609858 at *3 (finding that the fourth *Eitel* factor is neutral). Here, the $48,284.67[3] at stake weighs neutrally on whether or not the court

---

[3] That is, $2,299.27 per month for twenty-one months from the date of decedent's death until the date this action was filed. *See* Compl. ¶ 39.

should grant default judgment against Jennifer Taylor because the Trustees are not asserting a claim to the funds, but are attempting to distribute the funds to the party entitled to the Benefits. *See Transamerica Life Ins. Co.*, 2011 WL 5241257 at *4.

The fifth *Eitel* factor — possibility of a dispute concerning the material facts — also weighs in favor of default judgment. Because Jennifer Taylor has not made an effort to challenge the complaint, there is nothing to suggest that a dispute in the facts exists. *See Transamerica Life Ins. Co.*, 2011 WL 5241257 at *4 (finding that "there is a very low likelihood that any genuine issue of material fact exists" because "the court [assumes] the truth of well-pleaded facts in the complaint following the clerk's entry of default"); *see also Canul*, 2012 WL 844589 at *3 ("[T]here is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge the Complaint or otherwise appear in this case."). Therefore, this factor weighs in favor of entering default judgment against Jennifer Taylor.

The sixth *Eitel* factor — whether the default was due to excusable neglect — also weighs in favor of default judgment. Courts will not find excusable neglect where defendants have failed to respond following proper service of the complaint, notice of entry of default, and a motion in support of default judgment. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). This is particularly true where a plaintiff used extensive efforts to obtain a defendant's participation and where evidence exists that the defendant communicated with plaintiffs' counsel that she was aware there were proceedings against her. *Jennings*, 2011 WL 2609858 at *3. Here, Jennifer Taylor was properly served with the summons and complaint, the notice of entry of default, and the motion for default judgment. *See* Dkt. Nos. 11, 19, and 37. Jennifer Taylor was also aware of this proceeding as she spoke with plaintiffs' counsel over the phone asking about the summons and complaint she had received. *See* Nicholas Decl. ¶ 6. Jennifer Taylor's failure to respond to this action shows that the default was not due to excusable neglect. *See Shanghai Automation*

*Instrument Co.*, 194 F. Supp. 2d at 1005; *see also Jennings*, 2011 WL 2609858 at *3. This factor weighs in favor of default judgment against Jennifer Taylor.

The last *Eitel* factor — the strong policy favoring decisions on the merits — weighs against entering default judgment, but given Jennifer Taylor's failure to respond to this action, a decision on the merits is impractical in this case. *See Jennings*, 2011 WL 2609858 at *4; *see also Canul*, 2012 WL 844589 at *3. At any rate, in light of the weight of the above factors in favor of default judgment, this factor is not dispositive. *See Transamerica Life Ins. Co.*, 2011 WL 5241257 at *4 (finding that the policy favoring decisions on the merits does not by itself preclude entry of default judgment). On balance, the Court finds that all the *Eitel* factors together weigh in favor of entering default judgment against Jennifer Taylor.

### 2. Default Judgment Against Laversa Pier

The *Eitel* seven-factor analysis for default judgment against Laversa Pier is identical to the analysis for default judgment against Jennifer Taylor, with the exception of the sixth factor — whether the default was due to excusable neglect. In *Peters*, 660 F. Supp. 2d at 1144, the district court found that default was not due to excusable neglect where evidence showed that the defendant did not claim entitlement to the impleaded funds. The court found the defendant's failure to appear in the action to be intentional. *Id.* Similarly here, plaintiff's counsel alleges that Laversa Pier contacted plaintiff's counsel stating that "she had no interest in the Survivor Pension benefit on account of James A. Taylor." Nicholas Decl. ¶ 11. Laversa Pier's failure to appear in this action was seemingly intentional. This, in addition to the fact that Laversa Pier failed to respond after being properly served, shows that default against Laversa Pier was not due to excusable neglect. *See Peters*, 660 F. Supp. 2d at 1144; *see also Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1005. Accordingly, the Court finds that all the *Eitel* factors together weigh in favor of entering default judgment against Laversa Pier.

//

### 3. Default Judgment Against Mary Taylor and Sheryl Perdue

The *Eitel* seven-factor analysis for default judgment against Mary Taylor and Sheryl Perdue is identical to the analysis for default judgment against Jennifer Taylor and Laversa Pier, except for the sixth factor. In *Canul*, 2012 WL 844589 at *3, the court found that "it is unlikely that [the defendant's] failure to answer, and the resulting defaults entered by the [clerk], were the result of excusable neglect" where "[the plaintiff] effectuated service on [the defendant] via substituted service, which is a method permitted by law."

Here, the Trustees properly sought administrative relief for substituted service on Mary Taylor and Sheryl Perdue. *See* Dkt. No. 23-24. The Trustees then effectuated service by publication. *See* Dkt. No. 26 and 29. Therefore, it is unlikely that either Mary Taylor or Sheryl Perdue's failure to appear in this action was a result of excusable neglect. *See Canul*, 2012 WL 844589 at *3. Taking into account this sixth factor tending towards default judgment, the Court finds that all the *Eitel* factors together weigh in favor of entering default judgment against Mary Taylor and Sheryl Perdue.

In sum, the Court finds the *Eitel* factors weigh in favor of granting default judgment against the defendants-in-default.

### C. Injunction Against Defendants-in-Default from Pursuing Further Claims to the Benefits

Under 28 U.S.C. § 1651 a federal court may "issue all writs necessary or appropriate in aid of their respective jurisdictions."[4] District courts have used 28 U.S.C. § 1651 to enjoin defendants in an interpleader action from bringing future proceedings regarding the same claim. *Peters*, 660 F. Supp. 2d at 1144-45. This is because "relitigation . . . would be judicially wasteful and raise the possibility of inconsistent results. It would also defeat the purpose of the [plaintiffs'] interpleader action." *Id.* at

---

[4] Federal Rule of Civil Procedure 22 alone does not authorize injunctions in rule interpleader actions against further claims in state or federal courts for the money at stake. *See* FED. R. CIV. P., Rules and Commentary Rule 22. Statutory interpleader, which does not apply here, provides for injunction relief under 28 U.S.C. § 2361.

Case No. 11-cv-03998 NC
REFERRAL AND RECOMMENDATION
RE MOTION FOR DEFAULT JUDGMENT

10

1145. Federal courts are authorized to enjoin parties from relitigating in both state and federal court. *Id.* at 1144; *see also New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998); *Gen. Ry. Signal. Co. v. Corcoran*, 921 F.2d 700, 707 (7th Cir. 1991).[5]

To be afforded injunctive relief from relitigation, the party seeking the injunction must prove that it would otherwise suffer irreparable harm. *Peters*, 660 F. Supp. 2d at 1144-45 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)). The Court will generally grant such injunction "where there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court." *Id.* (citing *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir.1990)).

Here, the Trustees would suffer irreparable harm if faced with future claims to the interpleaded funds after this action has been adjudicated against the defendants-in-default. *See id.* at 1144-45. The Trustees are merely disinterested stakeholders seeking to enforce the Plan and distribute the Benefits. Like in *Peters*, relitigation would defeat the purpose of this interpleader action. *See id.* at 1145. An injunction here is necessary in order to prevent judicial wastefulness and the "possibility of inconsistent results." *See id.* Therefore, Jennifer Taylor, Laversa Pier, Mary Taylor, and Sheryl Perdue should be enjoined from bringing any further action in state or federal court regarding their claims to the Benefits on account of James Taylor. *See id.* at 1144-45.

//

---

[5] Even though the Anti-Injunction Act limits the ability of federal courts to enjoin actions in State court, it allows for a relitigation exception where an injunction is "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *see also Peters*, 660 F. Supp. 2d at 1144-45.

## IV. CONCLUSION

Finding that the *Eitel* factors weigh in favor of default judgment, the Court recommends granting default judgment against Jennifer Taylor, Laversa Pier, Mary Taylor, and Sheryl Perdue. The Court further recommends that the District Court enjoin Jennifer Taylor, Laversa Pier, Mary Taylor, and Sheryl Perdue from pursuing further action in state or federal court regarding any claim to the Benefits on account of James Taylor. Plaintiff is ordered to serve a copy of this recommendation on Jennifer Taylor and Laversa Pier. Any party may object to this recommendation within 14 days after being served with a copy. FED. R. CIV. P. 72(b).

IT IS SO ORDERED.

DATED: July 2, 2012

Nathanael M. Cousins
United States Magistrate Judge