United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE ILWU-PMA PENSION PLAN, | No. C-11-3998 EMC |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | **(Docket No. 67)** |
| PAMELA COATES, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs the Trustees of the ILWU-PMA[1] Pension Plan ("the Trustees") have brought an interpleader action under Fed. R. Civ. P. 22 to resolve conflicting claims to decedent James A. Taylor's ILWU-PMA Pension Plan Survivor Pension benefits ("the Benefits"). *See* Complaint in Interpleader (Docket No. 1). In the instant Motion for Default Judgment (Docket No. 67), the Trustees apply to this Court for an order entering default judgment against Defendant Mary Taylor based on her failure to appear or otherwise respond to Plaintiffs' complaint within the time prescribed by the Federal Rules of Civil Procedure. The Trustees also request that this Court enjoin the Defendant from initiating any further legal action regarding her entitlement to the Benefits. Having considered Plaintiffs' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Plaintiffs' motion for the reasons discussed herein.

---

[1] ILWU-PMA is an abbreviation for the International Longshore and Warehouse Union and the Pacific Maritime Association, both of whom sponsor the ILWU-PMA Pension Plan.

## II. FACTUAL BACKGROUND

The Trustees are the named fiduciaries and designated administrators of the ILWU-PMA Pension Plan ("the Plan"), an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.* Compl. ¶¶ 3-4. Decedent James A. Taylor was a Plan participant who began receiving monthly benefits from the Plan when he retired on November 1, 2003, until his death on November 15, 2009. *Id.* ¶¶ 6, 29. The Plan provides that upon the death of a plan participant, the "surviving spouse [as defined by the Plan] will receive a monthly Survivor Pension benefit for the remainder of the surviving spouse's life." *Id.* ¶ 37. At the time this suit was filed, the amount of plan benefits payable to the surviving spouse equaled $2,299.27 per month. *Id.* ¶ 39.

Plaintiffs' complaint does not indicate that the pension plan documents record the identity of the decedent's spouse. However, records associated with a separate employee benefit plan sponsored by the ILWU and PMA do. Mr. Taylor was also a participant in the ILWU-PMA Welfare Plan ("Welfare Plan"), "a separate ERISA plan providing hospital, medical, and other benefits to longshore workers and their dependents." Comp. ¶ 14. "Under the Welfare Plan, longshore workers designate their dependants, including dependent spouses, as eligible for Welfare Plan coverage by submitting a 'Record Change Form' or a 'Dependent Verification Form.'" *Id.* ¶ 15. Plaintiffs, through the ILWU-PMA Benefit Plan Office, received a total of 11 such forms from the decedent over the course of his participation in the two plans. *See id.* ¶¶ 13-30. These forms identify five separate individuals as the decedent's spouse. Plaintiffs have named each of these five individuals as a defendant in this action "on information and belief that [each] may have an interest in the benefits at issue." *Id.* ¶¶ 9-11.

Defendant Laversa Pier, a resident of San Francisco, California, was married to James Taylor from October 11, 1980, until the dissolution of their marriage on a date before November 12, 1982. Compl. ¶ 9. Defendant Jennifer Taylor, a resident of Brentwood, California, was married to James Taylor on October 10, 1982. *Id.* ¶ 7. Jennifer Taylor was deleted as a dependent spouse by the decedent on a Record Change Form filed on January 18, 1984. *Id.* ¶ 21. Defendant Mary Taylor, whose residence is unknown, was married to James Taylor around January 1984 until the dissolution

of their marriage around February 1985. *Id.* ¶ 10. Defendant Sheryl Perdue, a resident of Lithonia, Georgia, was married to James Taylor from November 30, 1985, until the dissolution of their marriage on October 31, 1989. *Id.* ¶ 11. Defendant Pamela Coates, a resident of San Francisco, California, married James Taylor on August 6, 1999. *Id.* ¶ 8. At the time of his retirement, James Taylor indicated to the ILWU-PMA Benefit Plan Office that Pamela Coates was his legal spouse. *Id.* ¶ 29. On February 4, 2009, Mr. Taylor filed a "Dependent Verification Form" deleting Pamela Coates as a dependent spouse, and when he died later that year, Mr. Taylor's death certificate stated that his marital status was "widowed." *Id.* ¶¶ 30-31.

In January 2010, approximately two months after the decedent's death, Pamela Coates and Jennifer Taylor each submitted an "Application for Survivor Pension" on account of their marriage to James Taylor. Compl. ¶¶ 32-33. At the request of the ILWU-PMA Benefit Plan Office, both defendants separately submitted copies of their marriage certificates and letters from California Superior Courts for the Counties of Alameda, San Francisco, and Contra Costa, stating that no record of the dissolution of either of their marriages exists. *Id.* ¶¶ 34-36. "Because of the conflicting information regarding the overlapping dates of marriage between James A. Taylor and the five Defendants," Plaintiffs state they "cannot determine whether and to what extent Defendants" are entitled to Mr. Taylor's Survivor Pension benefits. *Id.* ¶ 38.

### III.   PROCEDURAL BACKGROUND

In an effort to resolve these conflicting claims to the Benefits, the Trustees filed this interpleader[2] action under Fed. R. Civ. P. 22, naming James Taylor's alleged spouses and former spouses as defendants. Compl. at 2. As a general rule, after properly effecting service of process in an interpleader action, "[a] named interpleader defendant who fails to answer the interpleader

---

[2] Interpleader allows a party "subjected to conflicting claims by two or more persons growing out of a single obligation" to "put the money or other property in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." Zechariah Chafee, Jr., *The Federal Interpleader Act of 1936: I*, 45 Yale L.J. 963, 963 (1936). Interpleader exists primarily for the benefit and protection of the party subject to multiple claims, allowing them to avoid the "burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing." *State of Texas v. State of Florida*, 306 U.S. 398, 412 (1939). *See also Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted." *Sun Life Assur. Co. of Canada, (U.S.) v. Conroy*, 431 F. Supp. 2d 220, 226 (D.R.I. 2006). Pamela Coates was served with a summons and copy of the complaint on September 6, 2011, and filed a timely answer to the complaint on September 30, 2011. *See* Docket Nos. 9, 10. Of the five defendants, Ms. Coates is the only one who has answered Plaintiffs' interpleader action.

Jennifer Taylor was served on August 29, 2011. *See* Docket No. 11. The Trustees allege that a person representing herself as Jennifer Taylor had a telephone conversation with Plaintiffs' counsel on September 2, 2011, to inquire about the summons and complaint she received. Declaration of Lindsay Nicholas ("Nicholas Decl.") (Docket No. 39) ¶ 6. Laversa Pier was served on September 19, 2011. *See* Docket. No. 12. The Trustees allege that Laversa Pier contacted Plaintiffs' counsel on September 20, 2011, to indicate that she had no interest in claiming the Benefits on account of her marriage to James Taylor. Nicholas Decl. ¶ 11. Other than these brief interactions with Plaintiffs' counsel, neither Ms. Pier nor Ms. Taylor filed a response to the complaint or otherwise entered an appearance in this action. The Trustees moved for entry of default against these two defendants, which the Clerk entered on November 17, 2011. *See* Docket No. 19.

After unsuccessful attempts to locate defendants Mary Taylor and Sheryl Perdue via searches of three electronic databases, Plaintiffs moved for permission to serve Mary Taylor and Sheryl Perdue by publication. *See* Pl.'s Motion to Serve by Publication (Docket No. 23). The Court granted the motion, and the Plaintiffs published summons for Mary Taylor in the San Francisco-based publications *The Recorder* and the *San Francisco Chronicle*. *See* Docket Nos. 26, 29. The Trustees published summons for Sheryl Perdue in the *The Recorder*, the *San Francisco Chronicle*, and the Atlanta-based publication the *Daily Report*. *See* Docket Nos. 25, 27-28. After Ms. Taylor and Ms. Perdue failed to file a timely answer or otherwise appear, the Clerk entered default against Mary Taylor on June 22, 2012, and against Sheryl Perdue on July 2, 2012. *See* Docket Nos. 46, 49.

The Plaintiffs thereafter filed a Motion for Default Judgment against all four defendants on the grounds that none of them had timely filed an answer or otherwise appeared in this action. *See* Docket No. 37. Magistrate Judge Cousins heard the motion and filed a report and recommendation

in favor of entering default judgment against all four defendants. *See* Docket No. 50. This Court adopted in part Judge Cousins' report and recommendation, and granted Plaintiffs' motion against Jennifer Taylor, Laversa Pier, and Sheryl Perdue, enjoining them from "pursuing further action in state or federal court regarding any claim to the benefits at issue." Order Adopting in Part Report and Recommendation ("Order") (Docket No. 56) at 1. As to Defendant Mary Taylor, however, the Court voiced "concerns that a default judgment against her may be premature." *Id*. Plaintiffs' database searches for Mary Taylor identified "hundreds of individuals with this name, none of whom have a birth date that matches the Welfare Plan's records." Pl.'s Motion to Serve by Publication at 3. The Court reasoned that, since the "complaint does not allege Mary Taylor resides in the San Francisco Bay Area," nationwide publication "would be more reasonably calculated to reach Ms. Taylor." Order at 2. It, therefore, denied Plaintiffs' motion for entry of default judgment, but granted "leave of the Court to publish summons as to Mary Taylor via a nationwide publication and, assuming she makes no appearance thereafter, seek a default judgment." *Id*.

Following the Court's ruling, the Plaintiffs published summons for Mary Taylor in the Washington, D.C.-based publication *The Washington Post*. *See* Docket No. 63. After Mary Taylor failed to file a timely answer or otherwise appear, the Clerk entered default against her on December 20, 2012. *See* Docket No. 66. The Plaintiffs thereafter brought their instant motion for entry of default judgment against Mary Taylor. Docket No. 67. The Court held a hearing on Plaintiffs' motion on February 7, 2013, at which Defendant Mary Taylor failed to appear.

## IV. DISCUSSION

A. Jurisdiction

In considering whether to enter a default judgment, a district court first must determine whether it has jurisdiction over the subject matter and the parties to the case. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

///

///

1. Subject Matter Jurisdiction

This Court has subject matter jurisdiction in this ERISA case under 29 U.S.C. § 1132(e)(1).[3] ERISA permits fiduciaries and plan administrators to obtain equitable relief to enforce any provisions of the terms of an ERISA-governed plan. *See* 29 U.S.C. § 1132(a)(3). The Ninth Circuit has held that such "equitable relief" includes interpleader actions that seek to determine the rightful beneficiaries to the proceeds of an ERISA covered plan in the face of multiple conflicting claimants. *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000).

2. Personal Jurisdiction

To enter default judgment, the Court must also have a basis for the exercise of personal jurisdiction over the defaulting defendant. *See Tuli*, 172 F.3d at 712 ("A judgment entered without personal jurisdiction over the parties is void."). Under ERISA, fiduciaries may bring an enforcement action in the federal district court of any district "where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Under this nationwide service of process provision, a court may exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the state in which the court sits. *Vivien v. Worldcom, Inc.*, No. 02-cv-01329 WHA, 2002 WL 31640557, at *2 (N.D. Cal. July 26, 2002); *see also Denny's, Inc. v. Cake*, 364 F.3d 521, 524 (4th Cir. 2004) (holding that a federal district court in South Carolina could exercise personal jurisdiction over the California Labor Commissioner because the ERISA plan was administered in South Carolina, the Commissioner had been served in California, and the action was a proper ERISA enforcement action).

In this case, the Plaintiffs have brought an ERISA enforcement action under 29 U.S.C. § 1132(a)(3) in an effort to "enforce the terms of the Pension Plan," that is, to determine "to whom the Survivor Pension benefits payable on account of James A. Taylor . . . are to be paid." Compl. at 2. The complaint does not allege Mary Taylor's state of residence, but under ERISA's nationwide

---

[3] Section 1132(e)(1) provides "[e]xcept for actions under subsection (a)(1)(B) of this section [inapplicable here], the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title."

6

service of process provision, this Court may exercise personal jurisdiction over her even if she does not reside in this judicial district. *See Vivien*, 2002 WL 31640557 at *2. Mary Taylor presumably falls within ERISA's nationwide service of process provision as long as she is a resident of the United States. *See Combs v. Doe*, No. 10-cv-01120 HRL, 2011 WL 738052, at *2 (N.D. Cal. Feb. 23, 2011) (recommending that default judgment be entered against a defendant whose identity and location are unknown). The Court has been given no reason to believe that she is not. Thus, the Court has a basis for exercising personal jurisdiction over Mary Taylor in order to grant default judgment against her.

B.  Default Judgment

    1.  Adequacy of Service of Process

As a threshold matter in considering a motion for default judgment, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(e) provides that "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ." California law allows for service by publication if the party to be served "cannot with reasonable diligence be served in another manner," and is a "necessary or proper party to the action" or "has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action." Cal. Code Civ. Pro. § 415.50(a). In order to effectuate service by publication, a party must publish the summons "in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served." Cal. Code Civ. Pro. § 415.50(b). "If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party." *Id.* California law also specifies that service by publication will be satisfied on the twenty-eighth day following the first date of publication, with the summons being published at least once a week for four consecutive weeks, with at least five days intervening between the publication dates. *See* California Government Code § 6064.

Here, the Plaintiffs have satisfied all requirements for effectuating service on Defendant Mary Taylor by publication. After unsuccessful attempts to locate Mary Taylor via searches of three electronic databases, Plaintiffs published summons for her in *The Recorder* and the *San Francisco Chronicle*. *See* Docket Nos. 26, 29. Following this Court's Order denying Plaintiffs' motion for entry of default judgment, and in an effort to effectuate service on the Defendant by national publication, Plaintiffs published summons for Mary Taylor in *The Washington Post*. *See* Docket Nos. 62, 63. Plaintiffs' declaration accompanying the instant motion (Declaration of Lindsay Nicholas, Docket No. 69), and their Proof of Publication (Docket No. 63), reflect that they have satisfied the requirements of California Government Code § 6064. Through national publication of the summons, Plaintiffs have discharged their duty to exercise "reasonable diligence" in effecting alternate service in a manner most likely to give actual notice to Mary Taylor of this action, as required by Cal. Code Civ. Pro. § 415.50. Thus, the record contains sufficient evidence to conclude that Mary Taylor has been properly served and noticed of this action as required by Fed. R. Civ. P 4 and the California Code of Civil Procedure.

2. Merits of Motion for Default Judgment

After the entry of default, a court may grant default judgment on the merits of a case. *See* Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the Court must construe as true all factual allegations in Plaintiffs' complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). *See also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (holding that at the default judgment stage, the factual allegations of the complaint, except those concerning

damages, are deemed admitted by the non-responding parties). Facts not contained in the pleadings and claims which are legally insufficient, however, are not established by default. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

The Court finds that all seven *Eitel* factors weigh in favor of granting default judgment against Mary Taylor. First, the Plaintiffs would suffer prejudice if the Court does not enter default judgment against this Defendant because they would be denied the finality of judgment sought through their interpleader action. *See Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d at 1144 (finding prejudice "if default judgment were not granted because [the ERISA plan fiduciaries] would be denied the certainty and finality that judgment in an interpleader action is intended to provide."); *see also W. Reserve Life Assurance Co. of Ohio v. Canul*, No. 11-cv-01751 AWI, 2012 WL 844589, at *2 (E.D. Cal Mar. 12, 2012), *report and recommendation adopted*, No. 11-cv-01751 AWI, 2012 WL 1074952 (E.D. Cal. Mar. 29, 2012) (holding that the plaintiff "would be prejudiced if a default judgment is not granted" because plaintiff "has no other alternative by which to evaluate [d]efendant's claim to the life insurance policy.") (citation omitted); *W. Conference of Teamsters Pension Plan v. Jennings*, No. 10-cv-03629, 2011 WL 2609858, at *3 (N.D. Cal. June, 5, 2011) ("Plaintiff and [answering defendant] would suffer prejudice if the Court does not enter default judgment. The dispute concerns [d]efendants' competing claims to interpleaded funds. Without entry of default judgment, the competing stakeholders' claims cannot be resolved.").

The second and third factors – the merits of the Plaintiffs' substantive claim and the sufficiency of the complaint – also weigh in favor of default judgment. These two factors together require "plaintiffs' allegations [to] state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, No. 94-cv-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996). *See also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) ("The issue here is whether the allegations in the complaint are sufficient to state a claim on which the [moving party] may recover."). The primary purposes for an action in interpleader are "(1) to protect the party depositing the funds with the court from secondary, follow-up actions and (2) to protect the resources of the interpleading party." *W. Reserve Life Assur. Co. of Ohio v. Canul*, 2012 WL 844589 at *2. Accepting the

Plaintiffs' allegations in the complaint as true, the Court finds that the Trustees have stated a claim upon which they may recover, as resolution of the five Defendants' rights to the plan benefits at issue will protect the Plaintiffs from multiple liability. *See Canul*, 2012 WL 844589 at *2. Therefore, the second and third *Eitel* factors weigh in favor of entering default judgment against Mary Taylor.

The fourth *Eitel* factor, the sum of money at stake in the action, weighs neither for nor against an entry of default judgment. In interpleader actions, the sum of money at stake, however significant, is not dispositive as the interpleading party is not asserting an interest in the interpleaded funds, nor are they seeking damages. *Transamerica Life Ins. Co. v. Estate of Ward*, No. 11-cv-0433 JAM, 2011 WL 5241257, at *4 (E.D. Cal. Oct. 31, 2011); *see also Jennings*, 2011 WL 2609858 at *3 (finding that the fourth *Eitel* factor is neutral in an interpleader action). The Plaintiffs in this action are not asserting a claim to the funds, but are attempting to distribute the funds to the party entitled to the plan benefits. There is no dispute that the funds to be deposited and distributed are determined by the Plan.

The fifth and sixth *Eitel* factors recommend that a court consider "the possibility of a dispute concerning material facts" and "whether the default was due to excusable neglect" in assessing whether to grant default judgment. *Eitel v. McCool*, 782 F.2d at 1471-72. The Court finds that both factors weigh in favor of entering default judgment. Mary Taylor has made no effort to challenge the Trustees' interpleader complaint. Therefore, there is nothing on the record before the Court to suggest that a factual dispute exists. *See Transamerica Life Ins. Co.*, 2011 WL 5241257 at *4 (finding that "there is a very low likelihood that any genuine issue of material fact exists" because "the court [assumes] the truth of well-pleaded facts in the complaint following the clerk's entry of default"); *see also Canul*, 2012 WL 844589 at *3 ("[T]here is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge the Complaint or otherwise appear in this case."). Further, considering the merits of this action, it is unlikely that Mary Taylor would assert a competing claim to be designated the decedent's "surviving spouse" under the plan, given that her marriage to Mr. Taylor ended in February 1985, and the decedent

twice remarried in the twenty four years before his death.  Turning to the sixth factor, the Plaintiffs sought and obtained administrative relief to proceed with substituted service on Mary Taylor.  *See* Docket Nos. 23-24, 61-62.  The Plaintiffs then effectuated service by publication.  *See* Docket Nos. 26, 29, 63.  "[I]t is unlikely that [the defendant's] failure to answer, and the resulting defaults entered by the [clerk], were the result of excusable neglect" where "[the plaintiff] effectuated service on [the defendant] via substituted service, which is a method permitted by law." *Canul*, 2012 WL 844589 at *3.  Therefore, these two factors also weigh in favor of default judgment.

Finally, while public policy favors decisions on the merits, *see Eitel*, 782 F.2d at 1472, Mary Taylor's failure to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). "Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id*.  At any rate, in light of the weight of the above factors in favor of entering default judgment, this last *Eitel* factor is not dispositive.  *See Transamerica Life Ins. Co.*, 2011 WL 5241257 at *4 (finding that the policy favoring decisions on the merits does not by itself preclude entry of default judgment).

In sum, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendant Mary Taylor.

C.      <u>Injunction Against Defaulting Defendants</u>

The Plaintiffs' interpleader complaint seeks an "Injunctive Order of this Court" to prevent the named Defendants "from commencing or maintaining any action against the Plaintiffs, the Pension Plan,[] ILWU, PMA, or the Plans Office regarding entitlement to the Survivor Pension benefits payable under the Pension Plan on account of James A. Taylor." Compl. at 10.  Unlike statutory interpleader, rule interpleader under Fed. R. Civ. P. 22 does not authorize courts to enjoin litigants from pursuing further claims in state or federal court with regard to the res at issue.  *See* Fed. R. Civ. P. 65(e) ("These rules do not modify . . . 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader.").  However, courts have used the All Writs Statute, 28 U.S.C. § 1651, to enjoin defendants in an interpleader action from bringing future proceedings regarding the same claim in federal court.  *See New York Life Ins. Co. v.*

*Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998) ("Under the All Writs Statute, a federal court has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court. Accordingly, a federal court in a Rule 22 interpleader proceeding may issue an injunction to restrain the parties from pursuing such issues in another federal court.") (citations omitted). This is because relitigation of these issues "would be judicially wasteful and raise the possibility of inconsistent results. It would also defeat the purpose of the [plaintiffs'] interpleader action." *Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d at 1145.

Further, courts have held that injunctions issued pursuant to the All Writs Statute may be used to enjoin parties from relitigating the same issues or claims before state courts. Normally, the Anti–Injunction Act, 28 U.S.C. § 2283, "limits the ability of federal courts to enjoin state court proceedings." *Peters*, 660 F. Supp. 2d at 1144. However, an exception has been recognized for injunctions that are "necessary in aid of [the court's] jurisdiction, or to protect or effectuate its judgment." *Id.* This exception is referred to as the "relitigation exception." *Id.* (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988)). *See also Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 707 (7th Cir. 1991) ("A federal court presiding over an interpleader action may stay pending state court proceedings involving the same interpled fund under the 'necessary in aid of its jurisdiction' exception to the Anti–Injunction Act.").

To be afforded injunctive relief from relitigation, the party seeking the injunction must prove that it would otherwise suffer irreparable harm. *Peters*, 660 F. Supp. 2d at 1144-45 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)). The Court will generally grant such an injunction "where there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court." *Id.* (citing *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir.1990)). In this action, the Plaintiffs would suffer irreparable harm if faced with future claims to the interpled funds brought by Defendant Mary Taylor after this action has been adjudicated against her. *See id.* at 1145 (finding irreparable harm where relitigation would be "judicially wasteful and raise the possibility of inconsistent results"). The Plaintiff fiduciaries and administrators here are merely disinterested stakeholders seeking to enforce the terms of an

ERISA employee benefits plan and distribute the benefits to the appropriate party. As in *Peters*, relitigation would defeat the purpose of Plaintiffs' interpleader action and result in waste. *See id.* at 1145. An injunction here is necessary in order to prevent judicial wastefulness and the "possibility of inconsistent results." *See id.* Thus, the Court finds that Mary Taylor must be enjoined from bringing any further action in state or federal court regarding her claims to the subject benefits on account of James Taylor.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for entry of default judgment against Defendant Mary Taylor, and enjoins her from commencing or maintaining any action against the Plaintiffs regarding her entitlement to the Survivor Pension benefits payable under the Pension Plan on account of James A. Taylor.

This order disposes of Docket No. 67.

IT IS SO ORDERED.

Dated: February 12, 2013

_____
EDWARD M. CHEN
United States District Judge